UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| NEW ORLEANS AND GULF COAST RAILWAY COMPANY | CIVIL ACTION |
| VERSUS | No. 08-1666 |
| DELTA TERMINAL SERVICES, L.L.C. et al. | SECTION I/4 |


## ORDER AND REASONS

Before the Court is a motion for summary judgment "on plaintiff's complaint," filed on behalf of defendants, Delta Terminal Services, LLC and Kinder Morgan Energy Partners, L.P. (collectively, "defendant" or "Delta").[1] Plaintiff, New Orleans and Gulf Coast Railway Company ("NOGC"), has filed an opposition.[2] Also before the Court is a motion for partial summary judgment, filed on behalf of NOGC.[3] Delta has filed an opposition to this motion.[4] For the following reasons, Delta's motion is **DENIED** and NOGC's motion is **GRANTED**.

### *BACKGROUND*

Delta operates a railroad terminal facility located in Harvey, Louisiana, which provides liquid storage. In 1999, Delta, at its own expense, installed an in-motion rail scale at the facility

---

[1] R. Doc. Nos 65, 65-2, Delta mem. supp.

[2] R. Doc. No. 70, NOGC mem. opp'n.

[3] R. Doc. Nos. 63, 63-2 NOGC mem. supp.

[4] R. Doc. No.68, Delta mem. opp'n.

1

for the purpose of weighing rail cars. Since that time, Delta has maintained this scale and ensured that it is properly certified.

NOGC has provided all rail services at this facility since October, 2003.[5] From October, 2003 through February, 2009, NOGC has weighed rail cars transported into and out of Delta's facility using the in-motion rail scale. The procedure required for this weighing has not changed since NOGC began the service.

On November 10, 2005, NOGC issued Freight Tariff NOGC 6004-B, which became effective December 1, 2005. Subsequently, on November 15, 2006, NOGC issued tariff 6004-C, which superseded tariff 6004-B. Then, on January 26, 2007, NOGC issued tariff 6004-D, which superseded tariff 6004-C. Delta received copies of all three tariffs.

Each of tariffs 6004-B, 6004-C, and 6004-D contains an Item 390, which provides as follows:

| ITEM | SUBJECT | APPLICATION |
|------|---------|-------------|
| 390 | **Weighing Cars on non-Railroad scale** | NOGC charge for weighing cars on non-railroad scale is $50 per car. |

The terms of Item 390 remained the same as the tariffs were periodically renewed.

In August, 2007, NOGC invoiced Delta for weighing services dating from January 1, 2007.[6] This was the first invoice sent by NOGC to Delta.[7] Since that time, NOGC has invoiced

---

[5] Prior to October, 2003, rail services were provided by Union Pacific Railroad Company ("Union Pacific")

[6] R. Doc. No. 65-9, Ulm dep. at 123.

[7] Id. at 120-21.

2

Delta for weighing services through February, 2009. In this lawsuit, NOGC seeks to recover for weighing services dating from December 1, 2005 through the present.[8]

NOGC filed a complaint on April 16, 2008 and an amended complaint on March 11, 2009 in this Court. Delta now moves for summary judgment, contending that it is entitled to summary judgment because NOGC cannot prevail on either of its asserted theories of liability. First, Delta claims that Item 390 is unclear and ambiguous, which precludes the assessment of any weighing charges against it.[9] Second, Delta claims that NOGC's unjust enrichment claims is barred by the filed rate doctrine.[10] NOGC, meanwhile, moves for partial summary judgment, contending that the tariff at issue is clear, ambiguous, and applicable to the present case.

## LAW AND ANALYSIS

**I.     STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence

---

[8] R. Doc. No. 1, compl. ¶10.

[9] Delta mem. supp. 7-14.

[10] Id. at 14-16.

of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## II.    DISCUSSION

The facts material to these motions are essentially undisputed by the parties. The question presented to the Court is purely a legal one, i.e., whether Item 390 of NOGC's Freight Tariff is ambiguous on its face such that it may not be applied against Delta.

*A.    Item 390*

4

In United States v. Missouri-Kansas-Texas R. Co., 194 F.2d 777 (5th Cir. 1952), the Fifth Circuit stated:

> The construction of a printed railroad tariff presents a question of law and does not differ in character from that presented when the construction of any other document is in dispute. The four corners of the instrument must be visualized and all the pertinent provisions considered together, giving effect so far as possible to every word, clause, and sentence therein contained. The construction should be that meaning which the words used might reasonably carry to the shippers to whom they are addressed, and any ambiguity or reasonable doubt as to their meaning must be resolved against the carriers. But claimed ambiguities or doubts as to the meaning of a rate tariff must have a substantial basis in the light of the ordinary meaning of the words used and not a mere arguable basis.

Id. at 778-79; see also Atl. Coast Line R. Co. v. Atl. Bridge Co., 57 F.2d 654, 655 (5th Cir. 1932) ("[Tariffs] must be expressed in clear and plain terms, so that those dealing with and governed by them may understand them and act advisedly."). In view of this authority, Delta argues that this Court should find ambiguity in the tariff. Delta contends that the tariff does not identify which party may properly initiate a weighing request. Delta further argues that the tariff does not identify which party will be responsible for payment of the $50 per car charge.[11] Delta argues that "NOGC is obligated to use clear and plain terms in its Freight Tariffs so that any potential customer understands the tariff items and may act advisedly."[12] NOGC, meanwhile, claims that the tariff's language plainly describes the service, sets forth the charge for that service, and states that the charge applies to the party requesting the service.[13]

---

[11] Id. at 8.

[12] Id. at 9.

[13] NOGC mem. opp'n at 6.

The Court finds that NOGC's position is correct on two of three counts. The tariff does specify the service in question ("weighing cars on non-railroad scale") and the charge for that service ("charge . . . is $50 per car"). Contrary to NOGC's contention, however, the tariff does not specify against whom that charge will be assessed. The Court, though, does not find that this omission renders the tariff ambiguous. The terms of Item 190 do not "permit of two meanings," Atl. Coast Line, 57 F.2d at 655; instead, the tariff clearly states the charge and describes the service for which the fee is charged.

The tariff need not expressly indicate that a requesting party was subject to a $50 per car weighing charge in order to provide notice to such a party that it would be responsible for the charge.[14] Item 390 simply sets forth the rate to be charged for a given service. That a party which requests that service, as opposed to some other, non-requesting entity, would incur the specified charge is an unremarkable proposition. The Court finds that such a reading of the tariff conforms to "that meaning which the words used might reasonably carry to the shippers to whom they are addressed."[15] Missouri-Kansas-Texas R. Co., 194 F.2d at 778. Those who received the

---

[14] The Court notes that other items in NOGC's Freight Tariff are similarly silent with respect to which party is responsible for payment. For instance, Item 355 for "Team Track Usage Fee" simply states: "The fee to place a car on an NOGC track is $190 per car." R. Doc. No. 65-11, 6004-B tariff at 9. On the other hand, certain items are quite specific in describing when charges will be incurred. For example, Item 265 for "Service Special Train" states, in part: "NOGC will assess a charge of $3500.00 for motive power and crew whenever an industry requests an engine and crew for its exclusive use." Id. at 8 (emphasis added).

The fact that NOGC does not adhere to a uniform practice in identifying the party to be charged for a given service does not establish Item 390's ambiguity. Instead, it might show that, for certain services, NOGC would assess charges only in particular circumstances, whereas for other services, e.g., car weighing, NOGC would assess charges whenever a party requested the service, regardless of that party's identity.

[15] Although additional evidence is not necessary to support the Court's finding, the Court notes that said finding is also buttressed by the testimony of Philip Burris ("Burris"), Delta's expert witness. In his deposition, Burris testified as follows:
        A.      From the review that I performed most tariffs identify that an action
                  can't occur without it being requested and frequently it says that the
                  requesting party is responsible for the fee for services.
        Q.      If the tariff does not say that the requesting party is responsible, it's still
                  going to be the requesting party who's responsible.

6

tariff, such as Delta, were, therefore, on notice that NOGC would charge the specified fee when, upon request, it rendered the specified service.

Whether Delta requested weighing of cars remains a separate inquiry. In addition, the scope and timing of any weighing request made by Delta are separate factual inquiries. Delta's various arguments related to the Rail Car Weighing Request Form, to the prevailing understanding when NOGC took over operations from Union Pacific, and to the timing of NOGC's initial billing of Delta all present separate determinations. Resolution of those factual questions is not necessary for purposes of these cross-motions for summary judgment, which merely requests a determination whether the tariff is ambiguous on its face.

As the Court finds that Item 390 is not ambiguous on its face, the entry of summary judgment in Delta's favor is not appropriate and its motion is, therefore, **DENIED** with respect to the alleged ambiguity of the tariff. Further, to the extent NOGC's motion seeks a declaration that Item 390 is unambiguous on its face, that motion is **GRANTED**.

*B.     Unjust Enrichment*

Delta argues that NOGC's claim for unjust enrichment is barred by the filed tariff doctrine (also known as the "filed rate doctrine") and that it must be dismissed.[16] NOGC

---

A.   That's correct.
Q.   In other words, it's going to default back to the requesting party, is that accurate?
A.   Yes.

R. Doc. No. 70-6, Burris dep. at 78. Burris clearly states that the ordinary understanding of railroad tariffs that are silent with respect to the party responsible for paying charges is that the party requesting the service will be responsible.

[16] Delta mem. supp. at 14.

contends that the filed tariff doctrine operates only to preclude judicial modification of the rates established by a tariff. Further, NOGC states that its unjust enrichment claim is asserted solely as an alternative theory of liability, in the event Item 390 is deemed ambiguous.[17]

The filed tariff doctrine "bars all claims — state and federal — that attempt to challenge [the terms of a tariff] that a federal agency has reviewed and filed." Evanns v. AT&T Corp., 229 F.3d 837, 840 (9th Cir. 2000) (quoting County of Stanislaus v. Pacific Gas & Elec. Co., 114 F.3d 858, 866 (9th Cir. 1997)) (internal quotation marks omitted) (footnote omitted) (alteration in original). The three federal appellate cases cited by Delta all involve plaintiffs who challenged filed rates or tariffs and sought relief beyond the terms of those rates or tariffs.

In this case, however, the unjust enrichment claim does not arise in the same manner. Instead, NOGC, the entity which issued the tariff, is seeking to recover from Delta, the party subject to the tariff. NOGC alleges that Delta has benefitted from NOGC's weighing services by charging its own customers for those same services.[18] Moreover, NOGC's unjust enrichment theory of recovery is only operative in the event that the tariff is ruled inapplicable. NOGC is, therefore, not attempting to vary the terms of its tariff, but only asserting an alternate theory of recovery against Delta. The precedent cited by Delta does not compel dismissal of the unjust enrichment claim pursuant to the filed tariff doctrine under these circumstances.

Accordingly, Delta's request for summary judgment on this issue is **DENIED**.

III.   CONCLUSION

---

[17] NOGC mem. opp'n at 12.

[18] R. Doc. No. 38, am. compl. ¶12.

Accordingly,

**IT IS ORDERED** that Delta's motion for summary judgment is **DENIED** and that NOGC's motion for partial summary judgment is **GRANTED**.

New Orleans, Louisiana, June 2, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**